IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

ENTERED
12/02/2010

|  |  |
|---|---|
| IN RE | ) |
| | ) |
| SBPM HOLDINGS, INC., | ) CASE NO. 10-80310-G3-11 |
| | ) |
| Debtor, | ) |
| | ) |

<u>MEMORANDUM OPINION</u>

The court has held an evidentiary hearing on the "Motion for Relief from Stay to Foreclose on Debtor's Property" (Docket No. 24) filed by Wells Fargo Bank, N.A., as Trustee for the registered holders of Series CD 2007-CD4 Commercial Mortgage Pass-Through Certificates ("Movant"). The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered granting the motion. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

<u>Findings of Fact</u>

SBPM Holdings, Inc. ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on May 27, 2010.

In its initial petition, Debtor did not check the box identifying itself as a single asset real estate debtor. (Docket No. 1). Debtor amended the petition on June 2, 2010, identifying itself as a single asset real estate debtor. (Docket No. 4).

Debtor amended the petition again on June 23, 2010, removing the designation as a single asset real estate debtor.  (Docket No. 13).

Debtor's schedules indicate that on the petition date, Debtor owned an office building (the "Property") located at 13850 Gulf Freeway, Houston, Texas.[1]  (Docket No. 6).  Debtor's president, Joe E. Walters, Jr., testified that the property is Debtor's sole asset.  He testified that the property is divided into 14 suites.

On November 9, 2006, Debtor executed a promissory note, in the original principal amount of $1,115,000, payable to La Salle Bank, (Movant's Exhibit 1), a deed of trust with respect to the property (Movant's Exhibit 2), and an assignment of leases and rents with respect to the Property (Movant's Exhibit 3).  La Salle Bank assigned its rights to Movant.  (Movant's Exhibit 4).  Movant filed the real property documents in the real property records of Harris County, Texas.  (Movant's Exhibits 1, 2, 3).  Movant filed a financing statement with the Texas Secretary of State with respect to its security interest in the rents.  (Movant's Exhibit 5).

---

[1] The court notes that Movant's appraiser, Scott Rando, identified the owner of the property as Aircomm Communications, Inc.  The court makes no finding as to which entity owns the property.  The court's findings with respect to Debtor's equity in the property presume, for purposes of the instant motion, that Debtor's interest is that listed in its schedules.

Walters testified that the amount of Debtor's monthly payment due to Movant is approximately $10,022.  Alex Guggenheim, a senior vice president of CW Capital Asset Management LLC, Movant's special servicer, testified that Movant's claim as of the petition date is $1,378,141.81, including approximately $204,000 in prepayment premium.

Scott Rando, a Member of the Appraisal Institute who works as an appraiser with Cushman and Wakefield, testified that he conducted an appraisal of the Property.  Rando's report is in evidence.  In Rando's report, he analyzes the property, an office building with 11,400 square feet of net rentable area, based on the sales comparison approach and the income capitalization approach.

Under the sales comparison approach, Rando examined five sales, which occurred during the period from January, 2009 through June, 2010.  The gross sale prices of the properties identified by Rando ranged from $40.48 to $108.34 per square foot.  Rando adjusted the properties based on the market conditions, location, and the economics of each of the buildings, to arrive at a range of adjusted comparable sale prices from $52.63 to $75.84 per square foot.  (Movant's Exhibit 7).

Under the income capitalization approach, Rando analyzed Debtor's current rent roll, and listings for vacant space in the building.  Rando identified $140,580 in annual rent,

3

an average of $17.51 per square foot. Rando found vacant space in the building advertised with a listing price of $10.00 to $10.80 per square foot. Rando estimated that a market rental rate for similar property would be $16 to $17 per square foot. After deducting operating expenses, Rando estimated $68,012 in net income from operation of the building in the first year, with a stabilized income of $83,480 thereafter. Applying a capitalization rate of 10.75 percent, Rando found a value of $68.42 per square foot on a stabilized basis under the direct capitalization of income approach. On a discounted cash flow approach, Rando found a stabilized value of $54.39 per square foot. (Movant's Exhibit 7).

Rando's final conclusion is that the value of the Property, "as is," is $625,000, and the prospective value upon stabilization of the property is $750,000.[2] (Movant's Exhibit 7).

Walters testified that he believes the property value is $1,676,598. Walters testified that he based his opinion of value on sales of property he believes are more directly competitive with his property. Walters identified the sales of property he considered. He testified that these sales took place

---

[2] The primary factor in the difference between these two figures appears to be the difference between the 73.3 percent occupancy rate Rando observed on a casual visit to the property and a stabilized occupancy rate of 90 percent.

in November, 2004, December, 2006, and May, 2007.

The court finds that Walters' opinion as to value carries little weight, in light of the age of the sales he considered to be comparable. The court finds, for purposes of the instant motion, that the value of the property is $750,000, the stabilized amount identified by Rando.

Walters testified that Debtor has received rental income of approximately $10,000 per month since the date of filing of the petition. He testified that Debtor's building is now completely leased. He testified that Debtor's monthly rental income, beginning in January, 2011, will be $16,277. He testified that Debtor incurs expenses (including debt service) of $14,277 per month.[3] He testified that Debtor has proposed paying $2,000 per month to Movant in order to cure Debtor's arrearage, but that Movant has not accepted his proposal. Debtor has not filed a Chapter 11 plan.

Walters testified that Debtor has spent the funds received from rental income on commissions, tenant buildout and renovations, and payment to unsecured creditors. He testified that Debtor has made no payments to Movant since the date of filing of the petition in the instant Chapter 11 case. He testified that he believes Debtor was approximately seven months

---

[3] The court makes no finding as to whether this amount is correct.

in arrears in payments to Movant on the petition date.

## Conclusions of Law

Section 362(d) of the Bankruptcy Code provides in pertinent part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> >
> > (2) with respect to a stay of an act against property under subsection (a) of this section, if-
> >
> > > (A) the debtor does not have an equity in such property; and
> > >
> > > (B) such property is not necessary to an effective reorganization;
> >
> > (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later--
> >
> > > (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
> > >
> > > (B) the debtor has commenced monthly payments that--

>> (i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and
>
>> (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate.

11 U.S.C. § 362(d).

> Section 362(g) of the Bankruptcy Code provides:
>
> (g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section--
>
>> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
>
>> (2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g).

> Section 101(51B) of the Bankruptcy Code provides:
>
> The term "single asset real estate" means real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental.

11 U.S.C. § 101(51B).

> In the instant case, notwithstanding Debtor's having

left unchecked the "single asset real estate" box on its petition, the property is single asset real estate. The property is Debtor's sole asset and sole source of income.

In the instant case, more than 90 days have passed since the petition date. Debtor has not filed a plan of reorganization. Debtor has not commenced monthly payments to Movant. The court concludes that the stay should be lifted pursuant to Section 362(d)(3) of the Bankruptcy Code.

"Equity" as used in Section 362(d)(2) means the difference between the value of the subject property and the encumbrances against it. Matter of Sutton, 904 F.2d 327 (5th Cir. 1990).

In the instant case, the value of the Property is less than the amount identified in Movant's proof of claim.[4] The court concludes that Debtor lacks equity in the Property.

The question of whether a property is necessary to an effective reorganization depends, in the first instance, on whether the Debtor can show a reasonable prospect for a successful reorganization within a reasonable time. The debtor must do more than manifest unsubstantiated hopes for a successful reorganization. In re Canal Place L.P., 921 F.2d 569 (5th Cir. 1991).

---

[4] The value is less, whether or not the prepayment premium applies.

In the instant case, Debtor has demonstrated no prospect for a successful reorganization.  Debtor has not filed a plan of reorganization.  Walters has continued to operate Debtor, but has not accumulated cash, and has made no payments toward debt service postpetition.  The court concludes that Debtor has failed to show a reasonable prospect for a successful reorganization within a reasonable time.  The court concludes that the Property is not necessary to an effective reorganization.  The court concludes that the stay should be lifted pursuant to Section 362(d)(2) of the Bankruptcy Code.

What constitutes "cause" for the lifting of the stay pursuant to Section 362(d)(1) is not defined in the Bankruptcy Code.  Whether cause exists must be determined on a case by case basis based on an examination of the totality of circumstances.  <u>In re Reitnauer</u>, 152 F.3d 341, 343 n. 4 (5th Cir. 1998); <u>In re Mendoza</u>, 111 F.3d 1264 (5th Cir. 1997).

In the instant case, the stay should be lifted for cause, pursuant to Section 362(d)(1) of the Bankruptcy Code.  Under Section 363(c)(2) of the Bankruptcy Code, a Chapter 11 debtor in possession may not use cash collateral unless each entity that has an interest in the cash collateral consents, or the court, after notice and a hearing, authorizes such use.  Walters' testimony makes clear that Debtor has continued using Movant's cash collateral, without Movant's consent or court

authorization.  Debtor has made no effort to adequately protect Movant's interest in either the real property or the cash collateral.[5]  The court concludes that the stay should be lifted for cause, pursuant to Section 362(d)(1) of the Bankruptcy Code.

Based on the foregoing, a separate Judgment will be entered granting the "Motion for Relief from Stay to Foreclose on Debtor's Property" (Docket No. 24) filed by Wells Fargo Bank, N.A., as Trustee for the registered holders of Series CD 2007-CD4 Commercial Mortgage Pass-Through Certificates.

Signed at Houston, Texas on December 2, 2010.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

---

[5]Debtor is represented by an attorney.  It is virtually certain that either Debtor's counsel properly advised Walters that Debtor could not use cash collateral without seeking bank consent or filing a motion, and that advice was ignored, or that Debtor's counsel failed to advise Walters, or that Debtor's counsel advised Walters that, notwithstanding the court's order, Debtor could use cash collateral without seeking bank consent or filing a motion.  In the latter two instances, it appears that there was a significant failure by Debtor's counsel to make his client representative sufficiently aware of the legal responsibilities of a Chapter 11 debtor.  Although there is not clear evidence on which to make a referral to the United States Attorney in the instant case, the court will take into consideration this failure, when the time comes to address the fees of Debtor's counsel.